THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVE OHLEY, Defendant-Appellant.

(No. 72-116;

Fifth District—July 19, 1973.

*Rehearing denied September 12, 1973.*

Callis and Filcoff, of Granite City, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville, (James W. Jerz and Charles D. Sheehy, Jr., both of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

The defendant, Steve Ohley, was tried by jury in the Circuit Court of Madison County on an indictment charging him with the crime of unlawful delivery of a controlled substance. He was found guilty and was sentenced to the penitentiary for a term of not less than one nor more than three years. On appeal defendant contends that his right to a fair and impartial trial was abridged by virtue of the fact that defendant's Motion for a Bill of Particulars and Motion for Discovery were denied and because six tablets of the controlled substance in question were destroyed when the State performed chemical tests and examinations of the tablets. He also argues that the court erred in allowing the State's witnesses to testify as to the existence of a greater number of tablets of the controlled substance allegedly delivered than was specified in the indictment. He further contends that he was prejudiced by the State's Attorney's closing argument, that the court erred in refusing one of defendant's instructions, that defendant was convicted on false or fabricated evidence and that he was not proven guilty beyond a reasonable doubt. His final contention is that the sentence imposed was excessive and that he should have been granted probation.

The facts in this case, as they pertain to the issues raised, are fairly

uncomplicated. Two agents of the Illinois Bureau of Investigation, together with a police informant, testified that they went to defendant's home on September 7, 1971, at approximately 9:30 P.M. where defendant sold one of the agents 89 tablets of a substance represented by defendant to be LSD. The substance purchased from defendant was turned over to a crime laboratory analyst for testing. He made a preliminary test on 12 of the tablets to ascertain the presence of an indole compound, one of the signs of LSD. This examination revealed that the tablets were homogenous and that they did contain an indole compound. A more sophisticated test known as a thin layer chromotography test was then conducted on six tablets selected at random from those purchased from defendant; that test demonstrated that the tablets contained lysergic acid diethylamide, LSD, one of the controlled substances prohibited. The test totally consumed the six capsules which were examined. Defendant was thereafter arrested by a sheriff's deputy.

The defense offered was that of alibi. Defendant testified that on the evening in question he was working as a bartender at his usual place of business and that he was so working at the time of the alleged crime. This testimony was corroborated by six other witnesses who claimed to have been present at the bar on that evening and who stated that they remembered defendant's presence during the time of the alleged commission of the crime charged.

■■■ We turn first to defendant's contention that he was not proven guilty beyond a reasonable doubt. It is well established that it is the function of the jury, as the trier of fact, to assess the credibility of witnesses and to weigh conflicting evidence. We will not interfere with that function unless the verdict is clearly against the manifest weight of the evidence. Here the defendant presented an alibi defense buttressed by the supporting testimony of six corroborating witnesses, but the trier of fact is not obligated to believe the alibi witnesses (*People v. Setzke*, 22 Ill.2d 582; *People v. Johnson*, 123 Ill.App.2d 69), and a verdict of guilty can be sustained on the basis of positive identification of the accused by credible witnesses notwithstanding otherwise uncontradicted alibi evidence (*People v. Habdas*, 94 Ill.App.2d 330); this is true even though the alibi witnesses may be greater in number than those identifying the accused. (*People v. Wheeler*, 5 Ill.2d 474.) Here the testimony of the two Illinois Bureau of Investigation personnel together with the informant was positive and definite and there was therefore an irreconcilable dispute as to what occurred. In order to arrive at a verdict either the State's witnesses or the alibi witnesses would have to be disbelieved. The jury was in a better position to judge the credibility of these witnesses and in view of the positive and unequivocal nature of the testi-

mony by the State's witnesses we feel that there was sufficient evidence, if believed, to establish defendant's guilt beyond a reasonable doubt.

██ We now turn to defendant's contention that he was convicted upon false or fabricated evidence. One of the integral parts of the State's case was the testimony of the police informant who allegedly set up the sale in question. In an effort to discredit this witness, the defendant introduced records revealing that the informant had been arrested for selling narcotics to the same IBI agent to whom defendant allegedly sold drugs. The witness explained that he never really sold any narcotics but that the arrest was fabricated in order to draft off suspicion and to prevent retaliation inasmuch as he had been involved in over 30 drug arrests. In response to continued questioning by defense counsel the State stipulated that the arrest was made as the result of a false affidavit to the judicial personnel issuing the warrant for the arrest of the informant. This false affidavit has absolutely nothing to do with the merits of the case against defendant except as it relates to the credibility of the witness and inasmuch as the entire circumstances of the informant's arrest were brought before the jury we cannot see how defendant was prejudiced.

██ Defendant claims that the trial court committed reversible error in refusing a tendered instruction on the subject of alibi. This question is fully covered by IPI—Criminal 24.05 wherein it is recommended that no such instruction be given. It was, therefore, not error to refuse the tendered instruction. *People v. Poe*, 48 Ill.2d 506, 272 N.E.2d 28.

██ It is also asserted that defendant was substantially prejudiced by certain comments made by the State in closing argument. In that argument the State's Attorney referred to a telephone call made to defendant at his place of work on the evening in question. It was inferred that the sale was set up through this call and that defendant then left work to consummate the illegal transaction. Defendant objected to this statement on the grounds that it was an assertion of fact not in evidence. The court overruled the objection although the record reveals no testimony from any of the witnesses concerning a telephone call either made or received by defendant. It is clear, therefore, that the State's argument was improper and that the court erred in overruling defendant's objection thereto. We do not feel, however, that the error was of such magnitude as to require reversal. The testimony of the defendant and the alibi witnesses was unequivocal that defendant never left his place of work on the night in question and the testimony of the State's witnesses was equally as unequivocal that defendant was the individual from whom the drugs were purchased. Defendant and his girlfriend testified that his car was inoperative and that the girlfriend drove him to work,

whereas the State's witnesses testified that after the sale the defendant got into a car with a license plate which defendant admits was his and drove off. As previously noted, in order to convict defendant his alibi witnesses would have to be disbelieved for there is no way their testimony can be reconciled with that of the State's witnesses. We cannot therefore see where the improper comment by the State's Attorney was or could be determinative of the jury's decision since whether or not a phone call was made or received, defendant had to be either in one place or another and that was the issue of fact to be determined by the jury. Where the comment, even though improper, does not result in substantial prejudice to the defendant nor possibly influence the result of the trial such error is not reversible. *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432.

■■ Defendant next claims that he was severely prejudiced when the State's witnesses were allowed to testify as to the existence of a greater number of tablets of LSD than was specified in the indictment. The indictment refers to the delivery of 40 tablets, yet at trial the witnesses testified as to 89 tablets. Defendant claims that he was surprised by this testimony and that it prejudiced him before the jury. There is absolutely no basis for the claim of surprise for in answer to a Bill of Particulars filed by defendant the State referred directly to delivery of 89 "hits" of LSD and stated that the only physical evidence in the State's possession was 89 tablets of LSD. Defendant was, therefore, apprised of the number of tablets claimed to have been delivered. There is likewise no merit to the claim that the introduction of 89 tablets rather than the 40 specified in the indictment substantially prejudiced defendant in the eyes of the jury. In the first place there is nothing in the record which would indicate that the jury was ever aware of the indictment and even if it were, its sole function, according to an instruction tendered by defendant and given by the court, was to determine whether defendant "knowingly delivered lysergic acid diethylamide". No mention is made of number of tablets in the instructions to the jury and the jury was not concerned with such considerations but only whether the controlled substance was unlawfully delivered.

■■ As further grounds for reversal defendant asserts that he was denied the right to confront the State's expert witness, the crime lab analyst, by virtue of the fact that the six tablets which the expert tested, and which were claimed to have contained LSD, were completely destroyed in the chemical examination. The State chemist performed a preliminary examination upon a random sample of tablets which test revealed that the tablets were homogenous and contained an indole compound, one of the signs of LSD. He testified that the remaining tablets

had the same outward appearance and markings as those tested. He then made a definitive test of six randomly chosen tablets which revealed the presence of LSD. The definitive test resulted in the total destruction of the six tablets. On the basis of these tests it was the opinion of the expert that the remaining pills contained LSD although he admitted that without performing the definitive test he could not state positively that they were LSD tablets. Defendant claims it was error to allow the admission of the remaining tablets since there was no evidence that they contained LSD and that since the six tablets upon which the State witness based his opinion were destroyed defendant was unable to effectively cross-examine. We do not agree. An analysis of the final result of defendant's argument demonstrates its invalidity. On the one hand, he complains that the tablets were dissolved and completely destroyed in the definitive test which revealed the LSD, yet complains that the remaining pills were not subjected to that test. If no pills were subjected to the definitive test the State would be unable to prove the existence of LSD. On the other hand, if all the pills were destroyed in the necessary test, there would be no corpus deliciti, but only the unsubstantiated word of the State witness. It is for this reason that it is necessary to allow opinion evidence of the type presented. Certainly the fact that the pills introduced into evidence were not positively identified as LSD goes to the weight of the evidence, but it does not destroy their probative value when coupled with expert opinion testimony. Whether the drug substance to be delivered is a drug prescribed by the Controlled Substances Act is a question of fact for the jury. (*People v. Harrison*, 26 Ill.2d 377, 186 N.E.2d 657, *cert. denied*, 373 U.S. 928.) Here, the defendant filed a motion for production of physical evidence and the State offered to make the pills available for examination and testing. The tablets were made available for this purpose yet defendant chose not to avail himself of his right to so examine them. The State introduced credible expert evidence as to the nature of the tablets introduced. That the defendant failed to avail himself of the opportunity to examine the tablets or subject them to chemical analysis, and did not attempt to refute the opinion testimony offered by the State, certainly does not constitute a basis for a claim of deprivation of constitutional rights and we therefore find this claim to be without merit.

We likewise find no merit to defendant's contention that reversible error was committed when his additional motions for a Bill of Particulars and Discovery were denied. In those motions, defendant requested the State to set forth with particularity the exact chemical formula and molecular structure of the substance alleged to have been sold by the defendant. It is his contention that this information was

essential in order to provide a basis upon which an expert witness could have made a proper analysis of the substance in question. The State did provide defendant with the lab report of its chemist and did, in response to a prior defense motion, offer to produce the tablets for inspection and testing. Under these circumstances we do not see how the failure to require the State to set forth the complete chemical formula and molecular structure of the substance examined prejudiced defendant's rights. The information was available to defendant but he didn't avail himself of the opportunity presented. The major thrust of defendant's argument seems to be that the tablets sold by defendant may fall within one of the exceptions to the drugs prescribed by the Controlled Substances Act and that he needs this information so that he can ascertain whether in fact they did fall within one of the excepted categories. It is specifically provided in the Act itself, however, that the State has no duty of negating any exception to the Act and that the burden of proof is upon the person claiming the exemption or exception. (Ill. Rev. Stat. 1971, ch. 56½, sec. 1506.) The evidence here was not secreted and there is no wilful failure to produce or make available to defendant evidence in the State's possession. The State is not obligated to create defendant's defense and if defendant wanted the chemical information requested, he had the opportunity to obtain same by having a test run on the tablets.

■■■ Defendant's final claim is that he should have been released on probation. The sentence imposed was a term of not less than one nor more than three years. This penalty is within the statutory limits and there is no showing that the sentence imposed was arbitrary or discriminatory. As we have repeatedly held, the imposition of sentence is within the sound discretion of the trial court and only upon a clear showing of abuse of that discretion will we interfere with the trial court's determination. The offense for which defendant was convicted was deemed by the legislature when the Controlled Substances Act was enacted as the most damaging to the peace and welfare of the citizens of this State and one which warrants the most severe penalty. (Ill. Rev. Stat. 1971, ch. 56½, sec. 1411.) In view of this guideline, we do not feel that the sentence imposed was excessive. The judgment of the circuit court of Madison County is affirmed.

Affirmed.

EBERSPACHER, P. J., and G. MORAN, J., concur.