960 N.E.2d 564 (2011)
355 Ill. Dec. 682
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Ryan YOSELOWITZ, Defendant-Appellant.
No. 4-10-0764.
Appellate Court of Illinois, Fourth District.
September 20, 2011.
Steven B. Muslin (argued) and Craig M. Sandberg, Muslin & Sandberg, Chicago, for Ryan Yoselowitz.
William A. Yoder, State's Attorney, Bloomington (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

*565 OPINION
Justice APPLETON delivered the judgment of the court, with opinion:
¶ 1 Police recovered from defendant's vehicle and home a total of more than 36 pounds of cannabis packaged for sale. Defendant pleaded guilty to the offense, and prior to sentencing, he filed a motion challenging the constitutionality of the statute classifying the offense as a Class X felony. The trial court denied his motion and thereafter sentenced him to 12 years in prison. He appeals, raising his constitutional challenge in this court. We affirm.

¶ 2 I. BACKGROUND
¶ 3 In October 2009, in an open plea agreement, defendant pleaded guilty to unlawful possession of more than 5,000 grams of cannabis with intent to deliver (720 ILCS 550/5(g) (West 2008)), a Class X felony. The charge stemmed from a traffic stop of defendant's vehicle that led to the recovery of approximately 23 pounds of cannabis, which had been packaged for sale in 23 individual brick-type units. A subsequent search of defendant's apartment revealed an additional 13 pounds of cannabis packaged in a similar manner. Defendant pleaded guilty to possessing, with the intent to deliver, 36 pounds, or over 16,000 grams, of cannabis.
¶ 4 In January 2010, defendant filed a motion to declare unconstitutional the sentencing provision of section 5(g) of the Cannabis Control Act (720 ILCS 550/5(g) (West 2008)), which provides as follows:
"It is unlawful for any person knowingly to manufacture, deliver, or possess with intent to deliver, or manufacture, cannabis. Any person who violates this section with respect to:
* * *
(g) more than 5,000 grams of any substance containing cannabis is guilty of a Class X felony for which a fine not to exceed $200,000 may be imposed."
A Class X felony is subject to a range of punishment between 6 and 30 years in prison. See 730 ILCS 5/5-8-1(a)(3) (West 2008). In general, defendant claimed this sentencing classification leads to a harsh result when applied to defendant in light of the severity of the crime. In particular, he claims that the effects of cannabis have been studied in recent years, resulting in findings that cannabis is neither addictive nor does it lead to aggressive or criminal behavior. He argued that several states have legalized the use of cannabis for medical purposes and several others have decriminalized possession of small amounts of the drug. He claimed the offense with which he was charged was not equivalent, in severity, with other Class X felonies involving dangerous drugs and/or violent crimes.
¶ 5 At the hearing on defendant's motion, he presented the testimony of an expert in the field of cannabis and the related harmful effects or lack thereof. Dr. Christopher Glenn Fichtner, a psychiatrist, testified that he had published "really very few" articles or studies on the effects of cannabis but he had just completed a book entitled Cannabinomics: The Marijuana Policy Tipping Point, for which he did extensive research regarding the issues related to using cannabis for medical purposes. In his opinion and based on his research, Dr. Fichtner testified that "there is very little evidence that cannabis causes great bodily harm of any kind." He stated that the distribution of cannabis had a positive impact on public health because there was "a certain percentage of naturally occurring alcohol substitution."
¶ 6 After considering Dr. Fichtner's testimony and arguments of counsel, the trial court found defendant had failed to sustain his burden of demonstrating that sentencing *566 him as a Class X offender was "shock[ing]." The court also found defendant failed to establish an equal-protection violation. The court found the legislative classification of punishing "high[-]level dealers," those who have more than 5,000 grams in their possession, as a Class X offender bore a "very rational relationship to the goal" of eradicating the distribution of cannabis. The court stated:
"It's clearly a public policy issue. It's clearly one that the legislature and not the court ought to decide. When we boil this argument down, that's what we have is a difference of opinion as to whether or not this substance is harmful. And as it currently stands[,] I think the legislative determination was based on a rational basis that the legislature found it was harmful and therefore needed to be regulated. That was their call, and the fact that there is a differing opinion that's floating around out there means that that's where it needs to be addressed."
The court denied defendant's motion.
¶ 7 In March 2010, the trial court sentenced defendant to 12 years in prison. According to the presentence investigation report, this was defendant's third drug-related criminal conviction in 10 years. Defendant filed a motion to reconsider his sentence, again questioning the constitutionality of the Class X classification of the offense, and claiming the sentence was excessive. The court denied defendant's motion. This appeal followed.

¶ 8 II. ANALYSIS
¶ 9 In this appeal, defendant again raises the constitutional issue, contending the statute is violative of the proportionate-penalties clause, due process, and equal protection. He claims that the dangers associated with the crime of possessing over 5,000 grams of cannabis with intent to deliver, compared to other crimes classified as Class X felonies, are so minimal that there exists no justification for sentencing a cannabis offender to 6 to 30 years in prison, the same potential punishment for a person convicted of "kidnapping, rape, sexual assault, or armed robbery." According to defendant, the latest scientific research and data analysis indicated that cannabis posed "minimal harm to those exposed to it," and thus, section 5(g), which classified cannabis possession as a Class X felony, is unconstitutional.
¶ 10 "`Courts have a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done.' [Citation.] Because such challenges attack the constitutionality of statuteswhich is an issue of lawour review is de novo. [Citation.]" People v. Pelo, 404 Ill.App.3d 839, 882, 347 Ill.Dec. 260, 942 N.E.2d 463 (2010). Of course, the burden of establishing a statute's invalidity is on the party challenging the classification. People v. McCabe, 49 Ill.2d 338, 340, 275 N.E.2d 407 (1971). We will address each of defendant's constitutional challenges in turn.

¶ 11 A. Proportionate Penalties
¶ 12 Article I, section 11, of the Illinois Constitution of 1970 provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This court has previously noted as follows:
"In People v. Simmons (1991), 145 Ill.2d 264, 269-70 [164 Ill.Dec. 568], 583 N.E.2d 484, 486, the Illinois Supreme Court had previously construed that constitutional provision and wrote the following:
`The legislature has the power to declare and define conduct constituting a *567 crime and to determine the nature and extent of punishment for it. [Citations.] While this court acknowledges that article I, section 11, of the State of Illinois Constitution places some restraint on the right of the legislature to establish penalties for crimes, we have been reluctant to invalidate penalties prescribed by the legislature. [Citation.] "The legislature, institutionally, is more aware than the courts of the evils confronting our society and, therefore, is more capable of gauging the seriousness of various offenses." [Citation.] Legislative classifications are presumed valid [citation], and this court will invalidate a penalty only when it is clearly irrational [citation]. More precisely, in evaluating a penalty prescribed by the legislature, this court:
"indicated at an early date that the constitutional command that `penalties shall be proportioned to the nature of the offense' would justify interference with the legislative judgment only if the punishment was `cruel,' `degrading' or `so wholly disproportionate to the offense committed as to shock the moral sense of the community.'" [Citation.]'" People v. Harlow, 246 Ill. App.3d 196, 199, 185 Ill.Dec. 795, 615 N.E.2d 354 (1993).
"An unconstitutional statute is void ab initio * * *." People v. Coleman, 399 Ill. App.3d 1150, 1158, 339 Ill.Dec. 763, 927 N.E.2d 304 (2010).
¶ 13 To succeed on a proportionate-penalties claim, a "defendant must show that either the penalty imposed (1) is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community (the cruel or degrading test) or (2) differs from one imposed for an offense containing the same elements." People v. Brown, 375 Ill.App.3d 1116, 1118, 314 Ill.Dec. 511, 874 N.E.2d 607 (2007). In this case, defendant makes his claim under the first prong: that the punishment for possessing over 5,000 grams of cannabis with intent to deliver as a Class X felony is "so disproportionate to the offense itself, and the harm it causes, that it shocks the moral sense of the community."
¶ 14 The legislative declaration contained in section 1 of the Cannabis Control Act notes the pervasive use of cannabis, and its harmful effects, and mentions the inefficacy of prior legislation aimed at deterring the use of cannabis. The legislature stated:
"The General Assembly recognizes that (1) the current state of scientific and medical knowledge concerning the effects of cannabis makes it necessary to acknowledge the physical, psychological and sociological damage which is incumbent upon its use; and (2) the use of cannabis occupies the unusual position of being widely used and pervasive among the citizens of Illinois despite its harmful effects; and (3) previous legislation enacted to control or forbid the use of cannabis has often unnecessarily and unrealistically drawn a large segment of our population within the criminal justice system without succeeding in deterring the expansion of cannabis use. It is, therefore, the intent of the General Assembly, in the interest of the health and welfare of the citizens of Illinois, to establish a reasonable penalty system which is responsive to the current state of knowledge concerning cannabis and which directs the greatest efforts of law enforcement agencies toward the commercial traffickers and large-scale purveyors of cannabis. To this end, this Act provides wide latitude in the sentencing discretion of the courts and establishes penalties in a sharply rising progression based on the amount of substances containing cannabis involved in *568 each case." 720 ILCS 550/1 (West 2008).
¶ 15 This legislative declaration ends with the statement that the statute is intended to establish a reasonable penalty system which directs the efforts of law-enforcement agencies toward commercial traffickers and large-scale purveyors, with the penalties rising in sharp progression based upon the amount of cannabis involved. See People v. Schmidt, 38 Ill. App.3d 207, 208-09, 347 N.E.2d 289 (1976). Based on the amount of cannabis recovered from defendant, it seems that he is the type of trafficker targeted by the intended harsh penalties.
¶ 16 It is apparent that the legislature was aware that cannabis was not in the same category as some of the more dangerous and addictive drugs. See McCabe, 49 Ill.2d at 344-47, 275 N.E.2d 407 (finding marijuana should be removed from the Narcotic Drug Act as its effects are not comparable to opiates or cocaine but more closely resemble drugs placed in the Drug Abuse Control Act). Indeed, "[t]he passage of the Cannabis Control Act was in response to scientific, educational and medical pressure to excise marijuana, its control and punishment from the more serious drugs controlled and regulated by the Controlled Substances Act." People v. Taylor, 18 Ill.App.3d 480, 481, 309 N.E.2d 595 (1974). To this end, the legislature made possession of a small amount of cannabis, less than 2.5 grams, a Class B misdemeanor. 720 ILCS 550/5(a) (West 2008).
¶ 17 However, the seemingly innocent effects of cannabis do not override the increasing problem of illegal drug use in our society. Our supreme court accepted one expert's opinion that "the chronic use of any drug presents a danger of graduation to other and more dangerous drugs." McCabe, 49 Ill.2d at 348, 275 N.E.2d 407. Such use begins with the large-scale traffickers, as it is those individuals that make the presence of cannabis prevalent throughout our neighborhoods, schools, and communities. To combat this problem, the legislature designed a sentencing scheme to provide harsher penalties for these distributors as is necessary to deter such behavior. See 720 ILCS 550/1 (West 2008). The fact remains that the legislature is intent on eradicating the social evil found in the sale, possession, and use of illegal drugs. To date, cannabis is one of those illegal drugs. And we, as the judiciary, are not in the position to interfere with that designation.
¶ 18 Our supreme court has said:
"A large discretion is necessarily vested in the legislature to determine not only what the interests of public safety and welfare require but what measures are necessary to secure such interests. [Citation.] Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired results, and whether the legislative discretion within its prescribed limits should be exercised in a particular manner are matters for the judgment of the legislature, and the honest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." Thillens, Inc. v. Morey, 11 Ill.2d 579, 593, 144 N.E.2d 735 (1957).
¶ 19 The vast amount of argument and opinions pertaining to the level of severity of the ill effects of cannabis, whether they exist or not, is interesting, but is not evidence that can sustain defendant's burden on appeal that the imposition of his sentence violated the proportionate-penalties clause. Rather, his detailed and well-prepared presentation would be more appropriately presented to our legislature with the hope of changing the law. Defendant *569 has failed to present evidence which demonstrates that punishing him as a Class X offender with a 12-year prison sentence for possessing with the intent to deliver over 5,000 grams of cannabis was cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community. Nor was this sentence excessive, as this was defendant's third drug-related conviction and, as a result of his history, a sentence at the lower end of the potential range of 6 to 30 years cannot be deemed excessive. Therefore, the presumption of the validity of the classification prevails and defendant's sentence is affirmed on this issue.

¶ 20 B. Equal-Protection Clause
¶ 21 Defendant also claims his sentence violates his right to equal protection under the law. He claims he was treated differently than those individuals similarly situated "who commit criminal acts which do not cause or create actual or potential great bodily harm." He insists that unlike him, those individuals are not subject to a potential range of punishment of 6 to 30 years in prison. He claims there is no rational basis for the disparity.
"In determining whether a statutory classification violates the equal-protection clause, we must begin with the presumption that the classification is valid and must impose the burden of showing invalidity on the party challenging the classification. [Citations.] The equal-protection clause does not deny the States the power to classify in the exercise of their police power and it recognizes the existence of a broad latitude and discretion in classifying. [Citation.] If any state of facts may reasonably be conceived which would justify the classification, it must be upheld [citation]. The right of judicial questioning of a classification under the equal-protection clause is thus limited. * * * But it is required that there be a reasonable basis for distinguishing the class to which the law is applicable from the class to which it is not. [Citation.] Appropriate respect should be given to the fact of a legislative classification, but there is a judicial obligation to insure that the power to classify has not been exercised arbitrarily and, if it has been, the legislation cannot be justified under the label of `classification.' [Citation.] It was observed recently: `[A] state may not, under the guise of classification, arbitrarily discriminate against one and in favor of another similarly situated.' Lake Shore Auto Parts Co. v. Korzen, 49 Ill.2d 137, 148 [273 N.E.2d 592 (1971) ]." McCabe, 49 Ill.2d at 340-41, 275 N.E.2d 407.
¶ 22 Defendant's equal-protection claim requires little discussion as it is based on the same premise as the discussion on defendant's proportionate-penalties issue: that the presentation of information regarding the effects of cannabis is of no consequence to this court. In his brief, defendant presented a fair amount of scientific data that tends to demonstrate that cannabis use is not harmful. Relying on this data, he insists that it is unconstitutional to treat the offense of possession of more than 5,000 grams of cannabis with intent to deliver the same as a crime which causes great bodily harm. He claims there is no rational basis to classify the crime of which he was convicted as a Class X felony. "The proper forum for the [presentation and] refutation of such studies would be the legislature." Illinois Norml, Inc. v. Scott, 66 Ill.App.3d 633, 639, 23 Ill.Dec. 303, 383 N.E.2d 1330 (1978) (addressing a validity-of-legislation argument that marijuana use is harmless). Regardless of whether these studies and scientific data comprise the latest results of the effects of cannabis, it is presented in the wrong forum. It is not our duty as the judiciary "`to weigh fact-finding studies *570 against each other. This is a legislative function and we leave it to the Legislature to determine whether in its wisdom a change in or repeal of existing laws is warranted.'" Illinois Norml, 66 Ill.App.3d at 639-40, 23 Ill.Dec. 303, 383 N.E.2d 1330 (quoting People v. Aguiar, 257 Cal.App.2d 597, 65 Cal.Rptr. 171, 175 (1968), cert. denied, 393 U.S. 970, 89 S.Ct. 411, 21 L.Ed.2d 383 (1968)).
¶ 23 Defendant's entire argument rests on his perceived theory that cannabis is not a dangerous drug and the effects of cannabis do not pose a risk of great bodily injury. Therefore, he argues that crimes involving cannabis, in particular the crime set forth in section 5(g) of the Cannabis Control Act (720 ILCS 550/5(g) (West 2008)), should not be subject to the same penalty as those crimes that do, in fact, pose a risk of great bodily injury, or other Class X felonies. Without more, defendant fails to sustain his burden of establishing a constitutional violation. "Where, as here, the issue is whether there was a rational basis for the legislation, the existence of scientific evidence supporting such legislation, even though disputed by other studies, provides that rational basis and the legislation should be upheld. It is not the function of the judiciary to pass on the wisdom of such legislation, so long as there is a rational basis for it." Illinois Norml, 66 Ill.App.3d at 639, 23 Ill.Dec. 303, 383 N.E.2d 1330.
¶ 24 "We note only that the legislature has expressly recognized the widespread use of cannabis by Illinois citizens and has devised a penalty structure aimed at traffickers, with minimal penalties for private possession, depending on the amount possessed." Illinois Norml, 66 Ill.App.3d at 640, 23 Ill.Dec. 303, 383 N.E.2d 1330. Should defendant disagree with this structure, given the latest scientific data, his cause should be presented to Illinois lawmakers, not to the judiciary. In sum, we find there is a rational basis for classifying the crime for which defendant was convicted as a Class X felony based upon the legislature's stated and unchanged purpose in enacting the Cannabis Control Act. See 720 ILCS 550/1 (West 2008).

¶ 25 III. CONCLUSION
¶ 26 For the foregoing reasons, we affirm the trial court's judgment, and on this record, uphold the constitutionality of section 5(g) of the Cannabis Control Act (720 ILCS 550/5(g) (West 2008)). As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.
¶ 27 Affirmed.
Presiding Justice KNECHT and Justice STEIGMANN concurred in the judgment and opinion.